IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRACIE C. ERLANDSON, and                    08-CV-1137-BR
MATTHEW L. ERLANDSON, wife
and husband, and as Guardians               OPINION AND ORDER
*Ad Litem* for A.E., C.E., and
S.E., minors,

       Plaintiffs,

v.

FORD MOTOR COMPANY,

       Defendant.


TRACIE D. ERLANDSON
MATTHEW L. ERLANDSON
18220 Indian Creek Drive
Lake Oswego, OR  97035
(503) 624-4968

       Plaintiffs, *Pro Se*

NANCY M. ERFLE
CHRISTIANE R. FIFE
Schwabe Williamson & Wyatt, P.C.
1600-1900 Pacwest Center
1211 S.W. Fifth Ave.
Portland, OR 97204
(503) 222-9981

       Attorneys for Defendant


1   -   OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#37) for Summary Judgment, the Renewed Motion (#42) to Exclude Matthew Erlandson as an Expert, and the Motion (#61) for Partial Summary Judgment on Plaintiff's Claim for Punitive Damages filed by Defendant Ford Motor Company.  For the reasons that follow, the Court

(1) **GRANTS** Defendant's Motion for Summary Judgment,

(2) **DENIES as moot** Defendant's Renewed Motion to Exclude Matthew Erlandson as an Expert, and

(3) **DENIES as moot** Defendant's Motion for Partial Summary Judgment on Plaintiffs' Claim for Punitive Damages.


## BACKGROUND

The following facts are undisputed or, if disputed, are viewed in the light most favorable to Plaintiffs Matthew Erlandson and Tracie Erlandson (the Erlandsons) and their children, Plaintiffs A.E., C.E., and S.E (the children).

On June 30, 2001, the Erlandsons purchased a 2001 Ford Windstar from Courtesy Ford.  The Windstar was designed and manufactured by Defendant.

On November 6, 2006, Tracie Erlandson was taking the children, ages two, four, and five, to preschool in the Windstar. Tracie Erlandson started the engine and put the Windstar in

2   -  OPINION AND ORDER

reverse, but it did not move.  She concluded an object might be blocking the back tires, so she decided to investigate.  She set the emergency brake, but she left the Windstar in reverse and did not put it in park.  After she exited the Windstar and walked behind it to check for objects, the Windstar began to roll backwards down the driveway with the driver's door open.

Tracie Erlandson was able to move out of the way of the Windstar and was not injured.  The Windstar, with the children still inside, rolled down the driveway, crossed the sidewalk and street, and hit a neighbor's parked car.

The children, although upset, did not show any visible signs of injury, did not complain of any injuries, and were not taken anywhere for medical treatment.  Tracie Erlandson was able to get the children to school in the Windstar between 30 minutes and an hour late.  To date, neither Tracie Erlandson nor the children have shown any sign of physical injury, pain, or soreness from the accident nor have they received medical treatment for any physical injury arising from the accident.

Before November 6, 2006, Plaintiffs did not experience any problems in the nature of delayed transmission shifts or engagements while operating the Windstar.  On November 7, 2006, after the accident, Plaintiffs took the Windstar to AAMCO Transmissions in Tigard, Oregon, and AAMCO performed a visual inspection and a diagnostic service.  AAMCO gave Plaintiffs a

3   -   OPINION AND ORDER

copy of a July 24, 2006, "Technical Service Bulletin" (TSB)
issued by Defendant, which describes repairs that should be made
to certain Ford vehicles (including some 2001 Windstar vans) if
they exhibit problems with the engine and/or transmission due to
water entering the vehicle's powertrain control module (PCM).
Plaintiffs did not take the Windstar to Courtesy Ford or to any
other Ford dealership to have it inspected nor was the Windstar
inspected or tested at any time by either Plaintiffs or a
qualified expert for purposes of determining the cause of the
November 6, 2006, accident or determining whether the Windstar
should have repairs of the type described in the TSB.  Instead,
Plaintiffs continued to drive the Windstar without any other
problems potentially caused by delayed transmission shifts or
engagements.

On December 4, 2006, Plaintiffs wrote a letter[1] to Defendant
in which they described the accident and indicated they did not
want to participate in a lawsuit or join a class action.  They
offered to waive "any considerations for damages for the
emotional distress that occurred and was, or should have been,
foreseeable by the manufacturer" in exchange for prompt
settlement in the amount of $15,000.  Defendant notified
Plaintiffs it was forwarding the letter to its legal department.

---

[1] Although the letter is dated December 4, 2001, the parties
agree it was sent on December 4, 2006.

4   -  OPINION AND ORDER

On October 3, 2007, Plaintiffs traded in the Windstar at an Oregon auto dealership as part of a transaction to purchase a new vehicle.  Plaintiffs did not notify Defendant in advance that they intended to dispose of the Windstar.

On October 16, 2007, Plaintiffs sent Defendant a second letter in which they indicated they were planning to file an action against Defendant, but they did not inform Defendant that they no longer owned the Windstar.  The Windstar was sold at auction on February 12, 2008.  Plaintiffs commenced this action on September 30, 2008, and it was shortly thereafter Plaintiffs disclosed to Defendant that they had traded in the Windstar.


## PROCEDURAL BACKGROUND

On September 30, 2008, Plaintiffs, appearing *pro se*, filed a Complaint in this Court on the basis of diversity jurisdiction in which they alleged various tort and contract claims.  Plaintiffs filed a First Amended Complaint on January 20, 2009, and a Second Amended Complaint on May 1, 2009.  In their Second Amended Complaint, Plaintiffs allege claims against Defendant for (1) strict liability, (2) breach of implied warranty of merchantability, (3) product liability, (4) breach of contract, (5) breach of implied warranty of fitness, (6) negligence, and (7) fraud, all based on the contention that the November 6, 2006, accident was caused by a "mis-manufacture of the engine

5  -  OPINION AND ORDER

transmission driveability" or "delayed reverse engagement."
Plaintiffs seek noneconomic damages for the emotional distress of
Tracie Erlandson, the loss of consortium by Matthew Erlandson,
and the alleged physical harm to and emotional distress of the
children.  Plaintiffs also seek punitive damages.

On May 20, 2009, Defendant filed a Motion for Summary
Judgment in which it moves for summary judgment as to all of
Plaintiffs' claims or, in the alternative, for partial summary
judgment as to Plaintiffs' request for noneconomic damages.
Defendant also filed a Motion to Exclude Matthew Erlandson as an
Expert.  On July 6, 2009, Defendant filed its Motion for Partial
Summary Judgment on Plaintiffs' Claim for Punitive Damages.

On September 28, 2009, the Court provided the parties with a
preliminary Opinion and Order focused on the consequences of the
Plaintiffs' sale of their Windstar.  The Court permitted the
parties to file supplemental briefing and heard oral argument on
October 26, 2009, as to that issue.


## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary
judgment if no genuine issue exists regarding any material fact
and the moving party is entitled to judgment as a matter of law.
The moving party must show the absence of an issue of material
fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th

Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

7  -  OPINION AND ORDER

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

**DISCUSSION**

Defendant contends it is entitled to summary judgment as to all of Plaintiffs' claims on the grounds that Plaintiffs' disposal of the Windstar amounts to spoliation of material evidence to such a prejudicial degree that it requires the sanction of dismissal. In the alternative, Defendant contends it is entitled to summary judgment as to Plaintiffs' claims for emotional distress and loss of consortium damages.

**I.  Standards.**

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of evidence." *Med. Lab. Mgmt. Consultants v. Am. Broadcasting Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002)(quoting *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)). The Ninth Circuit "has recognized as part of a district court's inherent powers the 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'" *Unigard Sec. Ins. Co. v. Lakewood*

*Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). This inherent power "includes the power to sanction the responsible party" for failing to preserve material evidence. *Med. Lab. Mgmt Consultants*, 306 F.3d at 824. Such a sanction may include dismissal of the case or exclusion of evidence. *Pirv v. Glock, Inc.*, No. 06-CV-145, WL 54466, at *5 (D. Or. Jan. 8, 2009).

## II. Analysis.

### A. Sanctions for failure to preserve material evidence.

"Even when a court imposes a lesser evidentiary sanction than outright dismissal, it must find that the party willfully destroyed the evidence." *Id.* (citing *Unigard*, 982 F.2d at 368, 368 n.2. "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the [evidence was] potentially relevant to the litigation before [it was] destroyed.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)(quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).

Plaintiffs contend the design and manufacturing defects in the Windstar are not at the heart of their contract claims, and, therefore, Defendant does not require the opportunity to examine the vehicle. The Court, however, disagrees. The alleged defects are at the crux of all of Plaintiffs' claims: In their first and third claims, Plaintiffs allege a defect present in the Windstar caused Plaintiffs' damages; in their second and fifth claims,

Plaintiffs allege a defect present in the Windstar breached the implied warranty of merchantability and the implied warranty of fitness; in their fourth, sixth, and seventh claims, Plaintiffs allege different theories under which Defendant should have disclosed or warned Plaintiffs of the existence of a defect in the Windstar. Accordingly, the Windstar is material evidence in this matter as to every claim.

Moreover, because each claim is based on an alleged defect in the Windstar, Plaintiffs knew or should have known the Windstar would be material evidence in any action Plaintiffs brought arising from the alleged transmission "mis-manufacture." *See Unigard*, 982 F.2d at 368-69 (plaintiff's willful failure to preserve allegedly defective heater warranted sanctions). *See also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (2d Cir. 2001)(case dismissed when plaintiff's failure to preserve allegedly defective vehicle was determined to be willful and prejudicial to defendant); *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267-68 (8th Cir. 1993)(plaintiff sanctioned for failing to preserve vehicle when he knew or should have known it would be material evidence). Nonetheless, even though Plaintiffs implied the possibility of litigation in their December 4, 2006, letter when they indicated they would prefer to waive their claims in exchange for $15,000, Plaintiffs traded in the Windstar without any notice to Defendants of their intention to do so.

Plaintiffs, however, argue their particular Windstar is not relevant evidence because their claim is premised on a defect present in all Windstars, and therefore, it would be an abuse of discretion for the Court to dismiss this action as a sanction for Plaintiffs failure to preserve as evidence their particular Windstar.  Plaintiffs rely on the TSB published by Defendant, which they assert amounts to an admission that a defect in Ford Windstars allows moisture to enter the PCM module through the vehicle's cowl.  Plaintiffs argue Defendant's general acknowledgment of this problem in some Windstars is sufficient for Plaintiffs to prosecute--and for Defendant to defend against--their claim to a jury as to their specific Windstar. The Court notes the TSB does not constitute an admission by Defendant that a defect exists in all Windstars because it is no more than a recommended repair method for Windstars experiencing problems with moisture entering the PCM.  In any event, Plaintiffs do not cite any case law to support their theory in this respect.

Plaintiffs also insist that because Defendant could have requested to examine the Windstar at any time, Defendant is not entitled to rely on a failure-to-preserve-evidence defense merely because Defendant failed to do so.  But the initial duty to preserve material evidence falls to Plaintiffs and "extends to that period before the litigation when a party reasonably should

know that the evidence may be relevant to anticipated
litigation." *Silvestri*, 271 F.3d at 591.  The party in control
of the evidence has "an obligation to give the opposing party
notice of access to the evidence . . . if the party anticipates
litigation involving that evidence." *Id*.  *See also Dillon*, 986
F.2d at 267.  It is undisputed that Plaintiffs traded in the
Windstar nearly a year before they brought this action and that
they did not notify Defendant they were planning to do so before
they traded it in.  The fact that Defendant did not ask to
examine the Windstar before Plaintiffs commenced litigation does
not erode Plaintiffs' duty to preserve the Windstar as material
evidence in their lawsuit and/or to give notice to Defendant that
they were planning to trade in the Windstar.

Plaintiffs, nevertheless, assert this Court should adopt a
rule under which a potential plaintiff can dispose of an
allegedly defective product that may be relevant evidence in a
future lawsuit if, after receiving notice of a claim, the
defendant does not affirmatively request an inspection or
preservation of the allegedly defective product within a
reasonable time.  Plaintiffs, however, do not cite to any case to
support this proposition except for *Silvestri*.

In *Silvestri*, which Plaintiffs agree is controlling here,
the plaintiff was driving a borrowed vehicle when he lost control
of it and slid off of the road in November 1994.  271 F.3d at

12   -  OPINION AND ORDER

586.   In the accident, the plaintiff sustained serious injuries
to his face that allegedly occurred because the vehicle's airbag
did not deploy properly.  *Id*.  The plaintiff retained an
attorney, who in turn retained two accident-reconstruction
experts in anticipation of litigation.  *Id*.  The two experts
examined the vehicle and the crash site and wrote reports
concluding the airbag should have deployed.  *Id*. at 587.  The
vehicle's owner transferred title to his insurance company
approximately three months later, and the vehicle was
subsequently repaired and sold.  *Id*.  Neither plaintiff nor his
attorney notified the defendant that an accident had occurred
or that the plaintiff planned to file a lawsuit until three years
after the accident occurred.  The defendant ultimately found the
vehicle in 1998 and was able to retain its own expert to conduct
an inspection.  *Id*.  The defendant's expert reviewed the reports
by the plaintiff's expert and, based on those reports, concluded
there was not any need for the airbag to deploy because of the
nature of the collision.  *Id*. at 587-88.  Moreover, the expert
found the airbag sensing and diagnostic module did not suffer
from any defects.  *Id*. at 587.  He also noted, however, there was
not any way to determine whether the airbag sensing and
diagnostic module was the same module that was in the car in
1994.  Applying federal spoliation law, the Fourth Circuit
concluded the defendant was severely prejudiced because the

13   -  OPINION AND ORDER

plaintiff failed to notify the defendant of its potential claim and to provide the defendant with an opportunity to inspect the vehicle before it was repaired even though the plaintiff knew the vehicle would be relevant evidence. *Id.* at 593. The court placed emphasis on the fact that even though some inspections of the vehicle had been performed, the plaintiff had "denied the defendant access to the only evidence from which it could develop its defenses adequately." *Id*. at 594.

Similarly, Plaintiffs here have also denied Defendant access to the only evidence from which Defendant can adequately investigate Plaintiffs' claims and develop its defenses. *Id*. In addition, unlike in *Silvestri*, no one performed any inspections on Plaintiff's Windstar, which is now unavailable. Although Plaintiffs emphasize the fact that the plaintiff in *Silvestri* waited three years before notifying the defendant of its lawsuit, the court in *Silvestri* focused on the fact that the vehicle was disposed of only a few months after the accident without notice to the defendant or an opportunity to inspect the vehicle.

The Court notes Plaintiffs did not have the benefit of counsel, there is not any evidence that they traded in their Windstar with an improper motive, and Plaintiffs merely mentioned to Defendant's counsel after they filed the action that the Windstar had been traded in, all of which suggests Plaintiffs did not appreciate the potential consequences their actions would

have on this case.  Nonetheless, because Plaintiffs disposed of
their vehicle without notice to Defendant, Defendant was deprived
of the opportunity to inspect the vehicle.  Even though
Plaintiffs' motives were apparently innocent, the prejudice to
Defendant is significant.

For these reasons, the Court concludes Plaintiffs' failure
to preserve the Windstar as material evidence was willful and,
therefore, warrants sanctions.

**B.    Appropriate sanction.**

As noted, sanctions for willfully disposing of material
evidence may include dismissal of the matter.  *Pirv, Inc.*,
WL 54466, at *5.  "[D]ismissal is severe and constitutes the
ultimate sanction for spoliation" and "is usually justified only
in circumstances of bad faith or other like action." *Silvestri*,
271 F.3d at 593.  Even "when conduct is less culpable[, however,]
dismissal may be necessary if the prejudice to the defendant is
extraordinary, denying it the ability to adequately defend its
case." *Id*.  *See also Unigard*, 982 F.2d at 369 (disposal of
material evidence prejudicial).

Defendant contends it is severely prejudiced by Plaintiffs'
disposal of the Windstar because Defendant, without being able to
examine the Windstar, is precluded from showing that something
other than the alleged defect (for example, driver error on the
part of Tracie Erlandson) caused the Windstar to roll backwards

15   -  OPINION AND ORDER

down the driveway.  Moreover, without Plaintiff's Windstar,
Plaintiffs themselves are prevented from testing their own theory
as to what occurred.

Here, as in *Silvestri*, there is not any adequate substitute
for the vehicle itself in adjudicating Plaintiffs' claims and
Defendant's ability to evaluate and to defend against those
claims.  Thus, a lesser sanction than dismissal will not cure the
prejudice to Defendant.  As noted, however, the theories of
Plaintiffs and Defendant cannot be tested in the absence of the
actual product that is alleged to be defective.  *See Unigard*, 982
F.2d at 369 (destruction of allegedly defective heater
prejudicial to Defendant and fatal to plaintiff's claims).  *See
also Silvestri*, 271 F.3d at 594 (failure to preserve an allegedly
defective car a "highly prejudicial" act warranting dismissal);
*Dillon*, 986 F.2d at 267-68 (plaintiff's failure to preserve
allegedly defective car prejudicial).

On this record, the Court concludes Plaintiff's disposal of
the Windstar is so prejudicial to Defendant's ability to defend
against Plaintiff's claims that a sanction less than dismissal of
this matter would be meaningless.  The Court, therefore,
concludes Defendant is entitled to summary judgment of dismissal
as to all of Plaintiff's claims.  Defendant's Motion to Exclude
Matthew Erlandson as an Expert and Defendant's Motion for Partial
Summary Judgment on Plaintiff's Claim for Punitive Damages are,

therefore, moot.

## CONCLUSION

For these reasons, the Court

(1)  **GRANTS** Defendant's Motion (#37) for Summary Judgment,

(2)  **DENIES as moot** Defendant's Renewed Motion (#42) to Exclude Matthew Erlandson as an Expert, and

(3)  **DENIES as moot** Defendant's Motion (#61) for Partial Summary Judgment on Plaintiffs' Claim for Punitive Damages.

IT IS SO ORDERED.

DATED this 29th day of October, 2009.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

17   -  OPINION AND ORDER